IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARK E. and C.E., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-01266 |
| ) | |
| ANTHEM BLUE CROSS AND BLUE ) | |
| SHIELD, and the MAXIMUS EMPLOYEES ) | |
| WELFARE BENEFIT PLAN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure Defendants Anthem Blue Cross and Blue Shield ("Anthem") and the Maximus Employees Welfare Benefit Plan ("Plan"), by counsel, submit this Memorandum in Support of their Partial Motion to Dismiss the Complaint filed by Plaintiffs Mark E. and C.E. ("Plaintiffs").

As detailed below, Plaintiffs' Complaint does not allege facts sufficient to support a cause of action under the Mental Health Parity and Addiction Equity Act (the "Parity Act"). As a result, Plaintiffs' second claim for relief should be dismissed with prejudice.

## INTRODUCTION AND RELEVANT FACTUAL ALLEGATIONS[1]

Plaintiff Mark E. is a participant in the Maximus Employees Welfare Benefit Plan (the "Plan"), a self-funded employee welfare benefits plan.[2] Compl. ¶ 3. Plaintiff C.E. is a beneficiary of the Plan, *id.*, ¶ 3, and Anthem is the claims administrator for the Plan. *Id.* ¶ 2.

Plaintiffs seek benefits for C.E.'s treatment at Solacium Fulshear ("Fulshear"), a mental-health treatment center in Texas providing residential and transitional living services, based on two separate admissions on March 20, 2023 and July 19, 2023. *Id.* ¶¶ 10, 21. As to the March 20 admission, Anthem denied benefits because it determined that residential treatment was not medically necessary under the terms of the Plan. *Id.* ¶ 11. Anthem explained that C.E.'s clinical presentation did not meet the Plan's definition of medical necessity with respect to the Plan's incorporated MCG clinical criteria for residential treatment because the information provided upon C.E.'s admission did "not show [C.E. was] a danger to [her]self or others, or that [C.E. was] having serious problems functioning." *Id.* ¶ 11. Following an internal appeal, Anthem affirmed that the March 20, 2023 admission to Fulshear was not medically necessary under the Plan's terms. *Id.* ¶ 22.

Regarding Plaintiffs' post-service request for review of the second admission to Fulshear, Anthem approved benefits for the period between Plaintiff's readmission to Fulshear on July 19, 2023 through August 2, 2023. *Id.* ¶¶ 21, 23. However, Anthem determined further residential treatment was no longer medically as of August 3, 2023 going forward. *Id.* ¶ 23 (alleging the

---

[1] Defendants dispute many of Plaintiffs' allegations set forth in the Complaint, but assumes they are true for purposes of this Motion to Dismiss only. Defendants reserve the right to challenge all alleged facts at the appropriate time.

[2] The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), *see* 29 U.S.C. § 1001, *et seq.*

November 6, 2023 denial letter related to the second admission had the "same denial rationale," i.e. lack of medical necessity, as the first admission). Plaintiffs filed a request for external review of the second admission, which remains pending.[3]

Plaintiffs filed suit to challenge Anthem's denial of benefits, asserting two causes of action: a legal claim for benefits under 29 U.S.C. § 1132(a)(1)(B) and an equitable claim for a purported violation of the Parity Act under 29 U.S.C. § 1132(a)(3). Plaintiffs' Parity Act claim must be dismissed because Plaintiffs allege no injury arising from the claimed Parity Act violation except the denial of benefits under the Plan, an injury for which they have an adequate legal remedy through their benefits claim. As a result, Fourth Circuit precedent requires dismissal of this cause of action.

Moreover, even if Plaintiffs' available legal remedy did not bar their request for equitable relief, Plaintiffs have failed to plausibly allege Anthem or the Plan violated the Parity Act. Plaintiffs assert Anthem's clinical criteria for residential treatment, which Anthem relied upon in applying the Plan's medical necessity requirement, are too stringent, creating a disparity between mental health/substance use disorder benefits and analogous medical/surgical benefits. *Id.* ¶ 43. Specifically, Plaintiffs allege the residential treatment clinical criteria do not follow generally accepted standards of medical practice because the criteria require members to meet acute criteria for sub-acute care while analogous medical/surgical criteria do not require acute criteria for sub-acute care. *Id.* ¶¶ 46–47, 50. Plaintiffs also allege the residential treatment criteria fail to follow generally accepted standards of medical practice because the criteria fail "to take into consideration

---

[3] While Plaintiffs do not distinguish between the first and second admission, Plaintiffs requested an external review of the first admission for which Plaintiffs have received a response. Plaintiffs request for an external review related to the second admission, which was only recently submitted to Anthem, is still pending.

3

the patient's safety if she returned to a home environment, as well as the risk of decline or relapse if less intensive care than what was medically necessary was provided" while analogous medical/surgical criteria purportedly do take those factors into consideration. *Id.* ¶¶ 53–54. But because Plaintiffs fail to plead nonconclusory allegations comparing residential treatment to analogous medical/surgical benefits, they have failed to show any disparity between the challenged requirements for residential treatment and analogous medical/surgical benefits.

Plaintiffs also allege Anthem applies an impermissible duration-of-stay treatment limitation, limiting residential treatment to short-term stays but does not do so for analogous medical/surgical benefits. *Id.* ¶¶ 55–56. But, contrary to Plaintiffs' assertion, the Plan does contain a duration-of-stay quantitative limitations on medical/surgical analogous, and therefore no actionable disparity exists.

Because Plaintiffs have an adequate legal remedy and the allegations of the Complaint fail to plausibly allege a Parity Act violation, the Court should grant Defendants' motion and dismiss Plaintiffs' equitable Parity Act claim with prejudice.

## ARGUMENT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is warranted when the complaint is insufficient as a matter of law to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive this Motion to Dismiss, Plaintiffs' Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Merely alleging a "conceivable" claim is insufficient – a claim must be plausible to survive a motion to dismiss. *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570; *see also ACA Financial Guaranty Corp. v. City of Buena Vista*, 917 F.3d 206, 211–12 (4th Cir. 2019);

*Boy Blue, Inc. v. Zomba Recording, LLC*, No. 3:09-CV-483-HE, 2009 WL 2970794, at *1 (E.D. Va. Sept. 16, 2009) ("[A] complaint containing facts that are merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief.") (citations omitted)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79 (citing Fed. R. Civ. P. 8(a)(2)). Although the Court must accept the facts pleaded in the Complaint as true, conclusory allegations and legal conclusions "are not entitled to the assumption of truth." *Id.*; *see also ACA Fin. Guar. Corp.*, 917 F.3d at 211–212 ("Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice."). "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Additionally, in ruling on a motion to dismiss, a court may consider "documents . . . attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). It is well established that, in assessing the allegations of a complaint, a court may disregard factual allegations that "contradict matters properly subject to [such] exhibit[s]." *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 199 n.16 (4th Cir. 2022). Because Plaintiffs' Parity Act claims are based on the terms of the Plan and Anthem's applicable clinical criteria, and because those documents are referenced and relied on throughout the Complaint, the Court may consider those documents in resolving this motion.[4]

---

[4] The relevant documents are attached as exhibits herewith. The Maximus, Inc. Non-SCA HSA Medical Benefit Booklet is attached as **Exhibit A**. The applicable MCG residential treatment clinical criteria are attached as **Exhibit B** (published December 9, 2022 and in effect at the time of

I. **BECAUSE PLAINTIFFS HAVE AN ADEQUATE LEGAL REMEDY, THEIR CLAIM FOR EQUITABLE RELIEF MUST BE DISMISSED.**

Plaintiffs allege a violation of the Parity Act, seeking equitable relief through 29 U.S.C. § 1132(a)(3). Specifically, Plaintiffs allege the clinical criteria Anthem relied upon in determining medical necessity are more stringent than that of analogous medical/surgical benefits because they violate generally accepted standards of medical practice, Compl. ¶¶ 43–54, and that Anthem impermissibly applied a separate duration-of-stay treatment limitation not contained in the Plan. *Id.* ¶¶ 55–56. Plaintiffs allege Anthem and the Plan do not impose these same limitations for analogous medical/surgical benefits, which Plaintiffs contend include skilled nursing facilities, inpatient rehabilitation facilities, or inpatient hospice. *Id.* ¶¶ 44, 56.

The Parity Act prohibits a group health plan providing both medical and surgical benefits and mental health or substance abuse disorder benefits from imposing "a nonquantitative treatment limitation"—an NQTL—with respect to mental health substance use disorder benefits in any classification unless the terms of the plan . . . as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the [NQTL] to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification." 29 C.F.R.

---

the first admission) and **Exhibit C** (published May 19, 2023 and in effect at the time of the second admission). The clinical criteria for skilled nursing facilities, which are the recognized analog to residential treatments, are attached as **Exhibit D** (published December 9, 2022 and in effect at the time of the first admission) and **Exhibit E** (published May 19, 2023 and in effect at the time of the second admission). The clinical criteria for inpatient rehabilitation are attached as **Exhibit F** (published December 9, 2022 and in effect at the time of the first admission) and **Exhibit G** (published May 19, 2023 and in effect at the time of the second admission). The clinical criteria for inpatient hospice, which Plaintiff contends is an analogous level of care, are attached as **Exhibit H** (published December 9, 2022 and in effect at the time of the first admission) and **Exhibit I** (published May 19, 2023 and in effect at the time of the second admission).

§ 2590.712(c)(4)(i).[5] Examples of NQTLSs include, but are not limited to, medical-management standards limiting or excluding benefits based on medical necessity; restrictions based on geographic location, facility type, or provider specialty; and other criteria that limit the scope or duration of benefits for mental health or substance abuse disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii)(A), (H). The Parity Act does not, however, bar the use of NQTLs; so long as such treatment limitations are comparable across benefits, they are permissible.

Under 29 U.S.C. Section 1132(a)(3), a plan participant or beneficiary may bring a claim "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of the subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). As a "safety net" provision, *see Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996), claims for equitable relief under Section 1132(a)(3) are not cognizable when a plaintiff whose injury consists of a denial of benefits has "adequate relief available for the alleged improper denial of benefits through her right to sue directly under § 1132(a)(1)." *Lewis v. Anthem Health Plans of VA, Inc.*, No. 1:20-cv-773, 2020 WL 5884290, at *3 (E.D. Va. Aug. 31, 2020); *see also Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 105 (4th Cir. 2006); *Batten v. Aetna Life Ins. Co.*, No. 3:14-cv-513, 2016 WL 4435681, at *4 (E.D. Va. Aug. 17, 2016); *Carol P. v. Truliant Fed. Credit Union*, No. 3:22-CV-00356-RJC-DSC, 2023 WL 2110896, at *3–4 (W.D.N.C. Jan. 25, 2023), *report and recommendation adopted*, No. 3:22-CV-00356-RJC-DSC, 2023 WL 2088436 (W.D.N.C. Feb. 17, 2023). This is because when the allegations made in support of the Parity Act claim are of the type "routinely taken up in appeals of benefits denials," they do not constitute "*special circumstances*

---

[5] The analysis is different for quantitative treatment limitations, which are treatment limitations that limit benefits based on, for example, a number of visits in a Plan year. *See id.* § 2590.712(c)(1)(ii), (c)(2).

for which equitable relief is *uniquely appropriate*." *Batten*, 2016 WL 4435681, at *3 (quoting *Korotynska* 474 F.3d at 108). As courts in this circuit recognize, if the rule were otherwise, "every wrongful denial of [mental health] benefits could be characterized" as a Parity Act violation. *Carol P.*, 2023 WL 2110896, at *4 (quoting *Korotynska* 474 F.3d at 102).

As to Plaintiffs' request for equitable relief for the purposed Parity Act violation, the only injury Plaintiffs have alleged is the denial of benefits. Compl. ¶¶ 43, 46, 55–56. Specifically, Plaintiffs allege Anthem improperly utilized clinical criteria that violated generally accepted standards of medical practice. Compl. ¶ 46. As a result, in relying on these clinical criteria, Plaintiffs insist Anthem improperly denied C,E.'s claim for benefits as not medically necessary under the Plan. *Id.* ¶ 46. Importantly, however, the Plan defines "medically necessary" services as those that are "[w]ithin the standards of good medical practice within the organized medical community." Ex. A at 93. In other words, if Plaintiffs' allegations were true—i.e., the clinical criteria used by Anthem did not align with standards of good medical practice as the Plan requires—this Court could afford adequate legal relief through Plaintiffs' claim for benefits under 29 U.S.C. § 1132(a)(1)(B).

Plaintiffs also allege Anthem applied a separate treatment limitation, limiting residential treatment to short-term stays while not imposing such a limitation on analogous medical/surgical benefits. Compl. ¶¶ 55–56. But even assuming the truth of Plaintiffs' allegations that Anthem applied a separate treatment limitation regarding residential treatment that is not contained in the terms of the Plan, the Court could redress this alleged injury through Plaintiffs' legal claim under 29 U.S.C. § 1132(a)(1)(B); *Gower v. AIG Claim Services, Inc.*, 501 F. Supp. 2d 762 (N.D. W. Va. 2007) (awarding benefits for an administrator's failure to follow the Plan's terms).

8

Because Plaintiffs' allegations, even accepted as true for purposes of this motion, demonstrate that they have an adequate legal remedy through their claim for benefits under 29 U.S.C. § 1132(a)(1)(B), Plaintiffs' claim for equitable relief should be dismissed with prejudice.

## II. EVEN IF PLAINTIFFS' CLAIM WAS APPROPRIATE UNDER *VARITY* AND *KOROTYNSKA*, PLAINTIFFS' COMPLAINT FAILS TO PLAUSIBLY ALLEGE DEFENDANTS VIOLATED THE PARITY ACT.

As discussed above, the Parity Act requires employer-sponsored group health plans to provide parity in their coverage for mental health and substance use disorder treatments by preventing health insurance payers from adopting or enforcing limitations on coverage that imposes more stringent requirements on mental and medical health claims as compared to analogous medical and surgical conditions. *Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*, No. 3:18-CV-00873, 2021 WL 1026383, at *10 (D.S.C. Mar. 17, 2021); *see also* 29 U.S.C. § 1185a(3)(A). Thus, the Parity Act prohibits health plans from imposing disparate treatment limitations on mental health benefits or treatment limitations that "more restrictive" than those applied to "medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(3)(A)(ii).

Because the Parity Act does not prohibit plans from imposing limitations on the provision of mental health or substance use disorder benefits, the mere denial of benefits for mental health or substance use disorder treatment does not give rise to a Parity Act claim. In other words, a parity analysis is not outcome oriented. Rather, a plaintiff must plead—and then prove—a specific, more restrictive or separate limitation the health plan imposes on mental health or substance use disorder benefits as compared to those imposed on analogous medical/surgical benefits in the same classification.

"[T]o properly plead a Parity Act violation . . . the first thing Plaintiff must do is correctly identify the relevant limitation . . . [and] then allege a flaw in this limitation based on a comparison

9

to a relevant analogue." *Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138, at *5 (S.D. Fla. July 20, 2017); *see Michael M.*, 2021 WL 1026383, at *11; *see also* 29 C.F.R. § 2590.712(c)(2)(i). Thus, to withstand a motion to dismiss, Plaintiffs' Complaint must:

(1) identify a specific treatment limitation on mental health benefits;

(2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiff seeks benefits; and

(3) plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitations defendants would apply to the covered medical/surgical analog.

*James C. v. Anthem Blue Cross and Blue Shield*, No. 2:19-cv-38, 2021 WL 2532905, at *18 (D. Utah June 21, 2021); *Michael M.*, 2021 WL 1026383, at *11 (identifying skilled nursing facilities as the analogous benefit and analyzing "whether the Plan imposes more a restrictive nonquantitative limitation on treatment in a residential treatment center than treatment in a skilled nursing facility").

In this case, Plaintiffs identify two treatment limitations—medical necessity and duration-of-stay—they allege violated the Parity Act. Second, they identify three allegedly analogous medical/surgical benefits: (1) skilled nursing facilities; (2) inpatient hospice care;[6] and (3) rehabilitation facilities. Compl. ¶ 44. And finally, Plaintiffs allege, in a conclusory manner, there is a disparity between the mental health and substance use disorder benefits and medical/surgical benefits.

---

[6] Inpatient hospice care is an inappropriate analogous benefit because it is palliative care, and not for the purpose of treating an illness, injury, or disease. Ex. A at 47, 92. For inpatient hospice care to be a Covered Service, the Plan requires that a patient be deemed "terminally ill and likely to have less than six (6) months to live," as it is intended to be "palliative care" that "controls pain and relieves symptoms" and not to "cure a terminal illness." *Id.* at 47.

As outlined below, Plaintiffs' Parity Act claim must be dismissed because it fails to plausibly allege a disparity exists.

### A. Many of Plaintiffs' Allegations Are Not Well-Pleaded.

As previously discussed, a plaintiff must allege facts, not conclusions, to properly plead a claim. *ACA Fin. Guar. Corp.*, 917 F.3d at 211–12; *Massey*, 759 F.3d at 353 (noting legal conclusions or statements that "contradict matters properly [raised] . . . by [an] exhibit" are not well-pleaded facts and may be disregarded by the court). And in this case, this Court need not accept many of Plaintiffs' "factual" allegations because they are "mere legal conclusions" or are flatly contradicted by the documents on which Plaintiffs' Complaint relies, and must be "distinguish[ed from]" the "well-pleaded facts" "which the Court must assume as true." *Boy Blue, Inc.*, 2009 WL 2970794, at *2.

First, Plaintiffs' allegations that are simply descriptions of the Parity Act and its requirements do nothing to establish the plausibility of Plaintiffs' claim. *See* Compl. ¶¶ 39–42, 57. Such formulaic recitations of the law, devoid of factual support, do not advance Plaintiffs' Parity Act claim because they are legal conclusions. *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (explaining that "recitation of a claim's elements[] and naked assertions devoid of further factual enhancement" do not satisfy Rule 8); *see Charles W. v. United Behavioral Health*, No. 2:18-cv-829-TC, 2019 WL 6895331, *5 (D. Utah Dec. 18, 2019) (dismissing Parity Act claim because there was "nothing more than vague, conclusory, and generic statements that paraphrase or directly quote the statute's and regulation's language without tying the standards to any facts"). For purposes of this motion, such allegations must be disregarded. *See Iqbal*, 556 U.S. at 678–79.

Second, certain allegations contradict the Plan documents and clinical criteria properly considered in reviewing the plausibility of Plaintiffs' Parity Act Claim. In this case, Plaintiffs

11

allege the Plan contains a long-term/duration-of-stay treatment limitation for residential treatment but does not contain such a limitation for analogous medical/surgical benefits. Compl. ¶ 56. However, when considering the Plan documents "attached to the motion to dismiss, [which] are integral to the complaint and authentic," *Philips*, 572 F.3d at 180, the Plan does limit treatment in skilled nursing facilities to "60 days per calendar year." *See* Ex. A at 17. And inpatient hospice care is limited to participants who have "less than six months to live," with inpatient stays limited to "[s]hort-term" for "periods of crisis or as respite care." *Id.* at 47. As a result, Plaintiffs' allegation that the Plan does not contain a duration-of-stay limitation to medical/surgical analogs is contradicted by the Plan documents and thus are not well-pleaded facts this Court must accept as true. *Massey*, 759 F.3d at 353.

In sum, many of the allegations contained in the Complaint do not support a Parity Act violation because they are conclusory or contradict the express terms of the Plan or incorporated documents. This Court should not accept these allegations as true in reviewing Defendants' Partial Motion to Dismiss.

### B. Plaintiffs' Remaining Allegations Regarding the Plan's Medical Necessity Requirement Fail to Plausibly Allege a Violation of the Parity Act.

Turning to Plaintiffs' remaining allegations, Plaintiffs take issue with Anthem's residential treatment clinical criteria used to determine medical necessity. Plaintiffs allege Anthem's residential treatment clinical criteria do not follow "generally accepted standards of medical practice" because the criteria require acute symptoms to approve coverage for sub-acute care. Compl. ¶¶ 46–47. Plaintiffs do not specify or enumerate the "generally accepted standards" that Anthem supposedly failed to meet. Rather, Plaintiffs insist, in a conclusory manner, Anthem's use of these residential treatment criteria creates a disparity because analogous medical/surgical clinical criteria do not require acute symptoms for sub-acute care. As explained more fully below,

12

Plaintiffs' Parity Act claim must fail for two reasons.

>   i.  *Plaintiffs fail to plead any facts comparing residential treatment to medical/surgical analogs, an essential element of a Parity Act claim.*

Plaintiffs' claim that Anthem's residential treatment clinical criteria violate generally accepted standards of medical practice because the criteria require acute symptoms for sub-acute care, Compl. ¶¶ 46–47, 50, must be rejected because the Complaint contains no well-pleaded allegations <u>comparing</u> the requirements for continued care at a residential treatment center to those required for continued care in analogous treatment settings. A failure to compare limitations across analogous benefits is fatal to a Parity Act claim. *Michael M.*, 2021 WL 1026383, at *11 (focusing Parity Act analysis on comparison of limitations across benefits); *James C.*, 2021 WL 2532905, at *18; *Welp*, 2017 WL 3263138, at *6 (dismissing Parity Act claim that was "virtually devoid of any comparisons between the limitations imposed on mental health/substance treatments and those on medical/surgical analogues"). Yet Plaintiffs' Complaint contains only conclusory allegations that the Plan does not "require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria to receive Plan benefits." Compl. ¶ 50. This conclusory assertion, untethered from any "language or provisions in the Plan" establishing the requirements for an inpatient stay in analogous medical/surgical treatment settings, is insufficient to support a Parity Act claim. *Roy C. v. Aetna Life Ins. Co.*, No. 2:17-cv-1216, 2018 WL 4511972, at *3 (D. Utah Sept. 20, 2018); *Welp*, No. 17-80237-CIV, 2017 WL 3263138, at *6. Plaintiffs' Parity Act claim should be dismissed for this reason alone.

>   ii.  *Plaintiffs' allegations contradict the terms of the Plan and incorporated clinical criteria.*

Even if Plaintiffs' conclusory allegations were sufficient in isolation, they are not well-pleaded allegations the Court must accept as true because they are contradicted by the terms of the Plan. The Plan requires all Covered Services be medically necessary for the entirety of an inpatient

13

admission. Ex. A at 33. This means all inpatient admissions, including residential treatment, skilled nursing, inpatient rehabilitation, and inpatient hospice, require a "Utilization Review" to evaluate medical necessity. *Id.* at 33–35, 98. And each of these benefits have admission criteria and continued stay criteria which all consider the severity of a patient's illness or condition, as well as the patient's safety in determining the appropriate level of care. *See id.* at 33, 39; *see also* Ex. B–I.

For residential treatment and its medical/surgical analogs, the substantive threshold for whether admission or a continued stay is medically necessary is whether the patient's symptoms are severe enough to require 24-hour care. *See Michael M.*, 2021 WL 1026383, at *15. Admission to a residential treatment center "is intended for patients who need around-the-clock behavioral care but do not need the level of physical security and high frequency of psychiatric and medical intervention that are available on an inpatient unit." Ex. B at 6, n.A; Ex. C at 6, n.A. Among other requirements, patients must be a danger to themselves or others, or have a "[m]oderately severe [p]sychiatric, behavioral, or other comorbid condition[]" with "[s]erious dysfunction in daily living" to be appropriately admitted to a residential treatment center. Ex. B at 1; Ex. C at 1.

In addition to the admission criteria, the residential treatment clinical criteria also outline myriad requirements that must be met before a patient can be discharged and appropriately transitioned to a lower level of care. First, a patient's risk status must be acceptable, which means there must either be an absence or manageable level of suicidal/homicidal/self-harm thoughts. Ex. B at 2–3; Ex. C at 2–3. Second, a patient's "[f]unctional status" must be acceptable, meaning there is no impairment, or the impairment can be managed at a lower level of care. Ex. B at 2; Ex. C at 2. Third, a patient's symptoms must be stabilized and any remaining treatment is acceptable at a lower level of care. Ex. B at 2; Ex. C at 2. And finally, a patient must meet all treatment goals for

the residential level of care. Ex. B at 3; Ex. C at 3. Thus, contrary to Plaintiffs' assertion, the clinical criteria do not <u>require</u> "hearing voices," one of the alleged "acute" symptoms, for continued treatment in a residential treatment center. Compl. ¶ 47.[7] And the other "acute" criteria directly relate to the severity of the patient's symptoms and the resultant necessity of 24-hour care. *See* Ex. B at 12, 18; Ex. C at 12, 18–19 (defining "Risk status acceptable" and "Harm").

The residential treatment criteria align with the requirements at skilled nursing or rehabilitation facilities. Like a residential treatment center, a skilled nursing facility provides "a Physician's continuous care and 24 hour-a-day nursing care," Ex. A. at 53, for those with "intense and complex care needs." Ex. D at 1; Ex. E at 1. Likewise, the criteria for inpatient rehabilitation require "[i]ntense and complex care needs," which makes "inpatient care safer and more practicable than attempting care at a lower level" of care. Ex. F at 1; Ex. G at 1.[8] In short, for residential treatment, skilled nursing, and inpatient rehabilitation, once a patient can be safely discharged to a lower level of care for further treatment, 24-hour confinement is no longer medically necessary under the terms of the Plan.

As the district court in *Michael M.* reasoned, the "dispositive inquiry is whether the Plan uses more liberal criteria when it evaluates medical/surgical benefits" than those it applies to the mental health benefits. *Michael M.*, 2021 WL 1026383, at *14. There, the court addressed a similar

---

[7] As the criteria highlight, there is a distinction between "auditory hallucination[s]" and "command auditory hallucination[s]," Ex. B at 9, as well as a spectrum of severity of auditory hallucinations. Ex. C at 11–12. Not all patients who experience auditory hallucinations require 24-hour confinement and institutionalization.

[8] The inappropriate analogy of inpatient hospice care is highlighted here. To be admitted, a hospice patient must have "[s]evere uncontrolled symptoms" which cannot be treatment in another setting. Ex. H at 1; Ex. I at 1. Inpatient hospice stays are also only appropriate when the patient's condition is "unmanageable" because "[d]eath [is] imminent (24 to 72 hours)" or the patient is "[r]apidly deteriorating despite [a] course of optimal care." Ex. H at 1; Ex. I at 1.

15

claim that the plan at issue required members to "satisfy acute care medical necessity criteria to obtain mental health treatment benefits, but it applied sub-acute criteria in evaluating medical necessity for comparable medical/surgical treatment." *Id.* at *13. The *Michael M.* court rejected this claim, concluding that despite differences in the language used to describe the symptoms required to satisfy medical necessity—including the use of "acute" to describe certain symptoms but not others—the severity of symptoms necessary for coverage under the Plan was the same: symptoms that require 24-hour care. *Id.* at *15.[9]

Importantly, the *Michael M.* court expressly concluded "[i]t is not enough for Plaintiffs to show that one criterium describes the severity of symptoms for admission as 'acute' while the other does not." *Id.* at *14. Rather, "the substantive threshold for each relevant criterium is the need for 24-hour care," regardless of whether those symptoms are consistently described as "acute." *Id.* at *15. Thus, the relevant inquiry was whether this "substantive threshold" was applied comparably to both mental health and medical/surgical benefits. Because "the Plan requires the need for 24-hour care for admission into either a skilled nursing facility or a residential treatment center," the court concluded this was a "comparable application" that resulted in no violation of the Parity Act.[10]

---

[9] The *Michael M.* court also appropriately distinguished "acute care and acute symptoms," 2021 WL 1026383, at *14, which Plaintiffs attempt to conflate by contending Anthem requires acute symptoms for a "sub-acute level of care," i.e., residential treatment. Compl. ¶ 49. As the court observed, however, "Both Residential Treatment Centers and Skilled Nursing Facilities may provide sub-acute care. However, coverage for admission in a Skilled Nursing Facility or Residential Treatment Center under the [p]lan depends on the severity of symptoms a member exhibits." *Michael M.*, 2021 WL 1026383, at *14. Thus, the inquiry, here as in *Michael M.*, is whether the "severity of symptoms required" is more demanding for residential treatment.

[10] Although *Michael M.* was decided at summary judgment, the Court's analysis rests entirely on a comparison of the applicable clinical guidelines, the language of the Plan, and the reasons given for denial of coverage. *Michael M.*, 2021 WL 1026383, at *13-15. The Plan and clinical guidelines are attached to this motion and properly considered by the Court, *Philips*, 572 F.3d at 180, and the grounds for denial of benefits are expressly pleaded in the Complaint. Compl. ¶¶ 11, 21, 22, 23.

16

Similarly here, the relevant criteria governing a patient's stay at a residential treatment center and skilled nursing facility both address whether a patient's symptoms remain severe enough that 24-hour care and confinement is necessary. In this case, Anthem determined that upon her admission in March 2023, C.E. was not exhibiting symptoms that warranted 24-hour care. Compl. ¶ 11. This was because C.E. was determined to not be "a danger to [her]self or others, or that [she] was having serious problems functioning." *Id.* And as to the second admission, after the approved treatment, C.E. was no longer a "danger to [her]self or others," "having serious problems functioning." *Id.*; *see also id.* at 23 (alleging the denial reason for the second admission was the same has alleged in paragraph 11 of the Complaint). It is important to note that Anthem did not determine C.E. did not require any care or treatment at a lower level of care, but rather that treatment at the 24-hour care level was not medically necessary under the Plan.

While the residential treatment clinical criteria and medical/surgical analogs use different language to describe similar criteria for admission and discharge, "they are neither disparate nor incomparable, as they both stem from the guidelines' rationale that the need for treatment is governed by the severity of a patient's illness." *James C.*, 2021 WL 2532905, at *20; *Michael M.*, 2021 WL 1026383, at *15 (finding no disparity and comparable admission criteria when patients would be found to need 24-hour care under either residential treatment or skilled nursing criteria). The fact that the language differs does not indicate disparity but is "a logical consequence of the undeniable reality that every illness is inherently different and requires different treatment." *James C.*, 2021 WL 2532905, at *20.

---

Accordingly, this Court is equally well positioned to determine whether the relevant provisions of the Plan violate the Parity Act.

17

In sum, Plaintiffs fail to plausibly allege that Anthem violated the Parity Act based on alleged use of acute symptomology for residential treatment. Not only do Plaintiffs fail to compare the clinical criteria for residential treatment, which is fatal to the claim, but even when such a comparison of the clinical criteria for continued treatment in residential treatment to appropriate analogues is done, there is no disparity. As a result, this Court must dismiss Plaintiffs' Parity Act claim on these grounds.

## **CONCLUSION**

Plaintiffs' claim for equitable relief for a purported violation of the Parity Act must be dismissed. First, Plaintiffs have an adequate legal remedy through their benefits claim, and as a result, their request for equitable relief is inappropriate.

Further, Plaintiffs have failed to plausibly allege a disparity exists. As to their purported separate duration-of-stay treatment limitation, Plaintiffs' allegations directly contradict the terms of the Plan and need not be accepted as true. As to the medical necessity treatment limitation, Plaintiffs fail to compare the criteria Anthem used to deny C.E.'s residential treatment and those that apply to analogous medical/surgical benefits, an essential element of a Parity Act claim. And even in comparing the residential treatment clinical criteria to skilled nursing and inpatient rehabilitation criteria, there is no disparity as each analog properly considers a patient's severity of symptoms and safety to determine whether continued 24-hour care is needed. Because no disparity exists, this Court must grant Anthem's Partial Motion to Dismiss and dismiss Plaintiffs' Parity Act claim with prejudice.

| | |
|---|---|
| Date: August 22, 2024 | Respectfully submitted,<br><br>ANTHEM BLUE CROSS AND BLUE SHIELD AND THE MAXIMUS EMPLOYEES WELFARE BENEFIT PLAN<br><br>*/s/ Jonathan M. DeMars*<br>Jonathan M. DeMars (Va. Bar No. 96426)<br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br>1001 Haxall Point<br>Richmond, Virginia 23219<br>Telephone: (804) 697-2293<br>Facsimile: (804) 697-1339<br>Email: jonathan.demars@troutman.com<br><br>*Counsel for Defendants Anthem Blue Cross and Blue Shield and the Maximus Employees Welfare Benefit Plan* |