Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARK E. and C.E.,<br><br>          Plaintiffs,<br><br>vs.<br><br>ANTHEM BLUE CROSS and BLUE SHIELD, and the MAXIMUS EMPLOYEES WELFARE BENEFIT PLAN,<br><br>          Defendants. | OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS<br><br>Case No. 1:24-cv-01266<br><br>Hon. Rossie D. Alston, Jr.<br><br>Hon. Mag. Ivan D. Davis |

Plaintiffs Mark E. and C.E., through their undersigned counsel, hereby oppose

Defendants Anthem Blue Cross and Blue Shield ("Anthem") and the Maximus Employees

Welfare Benefit Plan's ("the Plan") partial motion to dismiss Plaintiffs' second cause of action.

## OVERVIEW

Defendants move to dismiss Plaintiffs' second cause of action, alleging that Defendants

have violated the Mental Health Parity and Addiction Equity Act ("MHPAEA"), for two reasons.

First, Defendants maintain that the equitable remedies Plaintiffs seek for their MHPAEA cause

1

of action are duplicative of the monetary damages they seek on their wrongful denial of benefits claim (Plaintiffs' first cause of action). Defendants' assertion is not true. Plaintiffs' MHPAEA action addresses a different injury: Defendants impose more stringent limitations on the availability of coverage for residential mental health treatment than on the availability of coverage for analogous medical/surgical treatment. Because the remedies for violations of MHPAEA are provided through 29 U.S.C. § 1132(a)(3) which allows for "appropriate equitable relief" for violation of that statute, this different injury may require remedies different from the monetary damages Plaintiffs seek for wrongful denial of benefits. These equitable remedies include declaratory relief, plan reformation, limited injunctive relief, or other equitable remedies the Court may draft. Recent Fourth Circuit precedent stands for the proposition that Plaintiffs may bring these claims and seek these forms of relief in the alternative. Accordingly, the Court should not dismiss Plaintiffs' MHPAEA claim based on Defendants' first argument.

Second, Defendants argue that Plaintiffs' MHPAEA theories of liability are not well-pled. The allegations in the Complaint do not bear out Defendants' accusations, but rather demonstrate that Plaintiffs have relied on the text of Defendants' own denial letters to clearly and plausibly articulate how Defendants have violated MHPAEA by requiring patients to display acute symptoms before Defendants will cover sub-acute inpatient mental health treatment, but not requiring acute symptoms from patients seeking coverage for sub-acute inpatient medical/surgical treatment. Further, even if Plaintiffs' Complaint was not particularly specific as to these allegations, the documents Defendants attached to their own motion to dismiss (which Plaintiffs sought and Defendants withheld prior to litigation) prove that Plaintiffs' theory of liability is not just well-pled, it is correct on the face of Defendants' own medical necessity

guidelines. Accordingly, the Court should also not dismiss Plaintiffs' MHPAEA claim based on Defendants' second argument.

Because Defendants' arguments for dismissal have no merit, the Court should deny Defendants' motion to dismiss Plaintiffs' MHPAEA cause of action.

## **RELEVANT FACTS**

### *Background*

1. Mark and C.E. are natural persons residing in Fairfax County, Virginia. Mark is C.E.'s father.[1]

2. Mark was a participant in, and C.E. was a beneficiary of, an ERISA-backed insurance plan (the "Plan") subject to MHPAEA.[2]

3. C.E. received residential mental health treat at Solacium Fulshear ("Fulshear"), a residential treatment facility that provides sub-acute treatment to adolescents.[3]

4. Defendants refused to cover most of the treatment C.E. received from Fulshear on the grounds that residential mental health treatment was not "medically necessary" for him.[4]

5. Notably, Defendants' first denial letter, dated March 24, 2023, stated that C.E.'s claims were denied because:

> The request tells us you went to a residential treatment center for your mental health condition. The program asked to extend your stay. The plan clinical criteria considers [sic] ongoing residential treatment medically necessary for those who are a danger to themselves or others (as shown by *hearing voices telling them to harm themselves or others or persistent thoughts of harm that cannot be managed at a lower level of care*). This service can also be medically necessary for those who have a mental health condition that is causing *serious problems with functioning*. (For

---

[1] *See* Complaint, ECF Doc. No. 1 ¶ 1.
[2] *See id.* ¶¶ 2-3.
[3] *See id.* ¶ 4.
[4] *Id.* ¶¶ 11, 21-23.

example, being impulsive or abusive, very poor self care, not sleeping or eating, avoidance of personal interactions, or unable to perform usual obligations). In addition, the person must be willing to stay and participate, and is expected to either improve with this care, or to keep from getting worse. The information we have does not show you are a *danger to yourself or others*, or that you are having *serious problems functioning*. For this reason, the request is denied as not medically necessary. There may be other treatment options to help you, such as outpatient services. You may want to discuss these with your doctor. It may help your doctor to know we reviewed the request using the MCG guideline Residential Behavioral Health Level of Care, Adult (ORG: B-901-RES).[5]

6.  A later letter reaffirmed that Defendants would not consider C.E.'s treatment at Fulshear to be medically necessary unless he was "at risk for serious harm that [he] needed 24-hour care."[6]

*Defendants' Alleged MHPAEA Violation in the Complaint*[7]

7.  Plaintiffs contend that hearing voices telling oneself to hurt others is an acute mental health symptom that warrants a higher level of treatment than residential mental health treatment.[8]

8.  Defendants' March 24, 2023 denial letter explicitly indicated that Defendants would not cover C.E.'s treatment at Fulshear in the absence of her hearing voices telling her to hurt herself or others or similarly intensive symptoms demonstrating he was in danger.[9]

---

[5] *Id*. ¶ 11 (emphases added).

[6] *Id*. ¶ 22.

[7] Plaintiffs note that their initial complaint alleged more theories of MHPAEA liability than the theory elaborated in this opposition memorandum. However, in their motion to dismiss Defendants represented that their sole basis for denying C.E.'s claims for treatment at Fulshear was their repeated determination that his care was not "medically necessary." *See* ECF Doc. No. 23 at 2-3. Accordingly, Plaintiffs narrow their MHPAEA allegations to the one articulated here, as Defendants' representations limit the degree to which their other alleged MHPAEA violations could have injured Plaintiffs.

[8] *See* ECF Doc. No. 1 ¶¶ 18, 47-48.

[9] *Id*. ¶ 11.

9.  Plaintiffs also contended the other requirements Defendants listed in their denial letters (i.e. "persistent thoughts of harm[,]" "serious problems with functioning" such as not sleeping or eating, or a "risk for serious harm") amount to acute mental health symptoms.[10]

10. Plaintiffs contended that by indicating C.E.'s claims were denied because she did not display these acute symptoms, Defendants' letters implied that in practice they would require C.E. something in the vein of those acute mental symptoms before they would pay her claims for sub-acute residential mental health treatment.[11]

11. Plaintiffs contended that Defendants do not require "individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions" (i.e. skilled nursing, subacute inpatient rehabilitation, and inpatient hospice facilities) to display acute symptoms as a prerequisite to coverage for that care.[12]

    *Additional Evidence of Defendants' MHPAEA Violations From Their Exhibits*[13]

12. At the time Plaintiffs filed their complaint, they did not have direct evidence supporting their theory that Defendants required acute symptoms from C.E. but would not require similarly acute symptoms from claimants seeking analogous medical/surgical care.[14]

---

[10] *See id*. ¶¶
[11] *See id*. ¶¶ 46-49.
[12] *See id*. ¶ 50.
[13] When Plaintiffs initially filed their Complaint, they did not have the benefit of the MCG Guidelines for skilled nursing, subacute inpatient rehabilitation, and inpatient hospice treatment – the three analogues they must compare to residential treatment in order to establish a MHPAEA violation. Defendants have produced purported copies of those guidelines as Exhibits to their motion to dismiss.
[14] *See infra* (explaining that Plaintiffs asked Defendants to disclose the guidelines Defendants use to evaluate medical necessity for medical/surgical analogues).

13. However, Defendants produced as exhibits to Defendants' motion to dismiss some of the medical/surgical guidelines Plaintiffs sought.[15]

14. Accordingly, Plaintiffs can now conclusively say that Defendants' guidelines to evaluate the medical necessity of admission into a "[s]killed nursing facility" or other "subacute facility" explicitly require that there be "no acute hospital care needs" before a patient can receive sub-acute care.[16]

15. By contrast, Defendants' guidelines to evaluate the medical necessity of admission into a residential treatment facility require, among other symptoms, "**1 or more** of the following:"

- Auditory hallucinations contributing to risk for suicide or serious Harm to self

- … persistent thoughts of suicide or serious Harm to self that cannot be adequately monitored or treated at lower level of care

…

- Auditory hallucinations or paranoid delusions contributing to risk for homicide or serious Harm to another

- … persistent thoughts of suicide or serious Harm to another that cannot be adequately monitored or treated at lower level of care…[17]

*The Remedies Plaintiffs Seek for Defendants' MHPAEA Violations*

16. Plaintiffs sought the following equitable remedies as a result of Defendants alleged MHPAEA violations:

(a) A declaration that the actions of the Defendants violate MHPAEA;

---

[15] *See, e.g.,* Exhibits D and E to Defendants' motion to dismiss.
[16] Exhibit D at 1, Exhibit E at 1.
[17] *See* Exhibit B at 1.

(b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

(g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

*Plaintiffs' Attempts to Obtain MHPAEA Documents From Defendants*

17. During the prelitigation appeals process, Mark repeatedly asked that Defendants provide him with "any clinical guidelines or medical necessity criteria" used in Defendants' determinations, as well as the "medical or surgical equivalents" to those criteria.[18]

---

[18] ECF Doc. No. 1 ¶ 20,

18. Defendants did not respond to this request beyond sending Mark a copy of his "Subscriber Certificate."[19]

## <u>ARGUMENT</u>

### I.    PLAINTIFFS HAVE ARTICULATED INJURIES, AND SEEK REMEDIES, FOR THEIR SECOND CAUSE OF ACTION THAT ARE NOT DUPLICATIVE OF THEIR FIRST CAUSE OF ACTION.

ERISA and MHPAEA address different injuries and protect different interests. ERISA protects contractual benefits and imposes disclosures, fiduciary duties, and standards for operating certain employee benefit plans.[20] MHPAEA is very different. Congress enacted MHPAEA to "end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[21]

In contrast to the relief sought under Plaintiffs' 29 U.S.C. §(a)(1)(B) claim, the equitable relief Plaintiffs seeks in its MHPAEA cause of action is directed at addressing violations of MHPAEA to ensure individuals will have access to coverage for mental health and substance use disorder treatment in the way Congress intended when it originally passed MHPAEA in 2008 and amended that statute as recently as 2020.[22]

In the nearly seventeen years since the Fourth Circuit decided *Korotynska v. Metro. Life Ins. Co.*,[23] lower courts have repeatedly misinterpreted *Korotynska* to conclusively bar ERISA

---

[19] ECF Doc. No. 1 ¶ 22.
[20] *See U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100-102 (2013) (generally describing ERISA's impact on contract law); 29 U.S.C. §§1022, 1024, and 1104 (setting forth various key provisions of ERISA).
[21] *Am. Psychiatric Ass'n. v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016).
[22] 116 P.L. 260, Division BB, Title II, Sec. 203. STRENGTHENING PARITY IN MENTAL HEALTH AND SUBSTANCE USE DISORDER BENEFITS; 29 U.S.C. §1185(a)(6),(7), and (8).
[23] 474 F.3d 101 (4th Cir. 2006).

participants from bringing simultaneous claims for relief under 29 U.S.C. § 1132 subsections (a)(1)(B) and (a)(3), even at the pleading stage and even where pled in the alternative.[24]

Respectfully, the cases that interpret *Korotynska* in this manner are wrong. The key question is not whether a party can bring simultaneous claims for relief under both subsections, but rather whether adequate relief will ultimately be available. Indeed, last year the Fourth Circuit held:

> We need not decide whether plaintiff could have obtained relief under Subsection (a)(3) because plaintiff did not sue under that provision, never sought leave to amend her complaint to add such a claim, and continues to disclaim reliance on any such a theory before this Court. We note, however, that plaintiff errs in asserting she could not have sought relief under Subsection (a)(3). True, a plaintiff who prevails in a claim for benefits under Subsection (a)(1)(B) may not also obtain other relief under Subsection (a)(3). See *Varity Corp.*, 516 U.S. at 512-15; *Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 102-03 (4th Cir. 2006). But Federal Rule of Civil Procedure 8(a)(3) specifically permits pleading "in the alternative," so nothing would have prevented plaintiff from suing under both provisions.[25]

This is a far more reasonable interpretation of *Korotynska* than rulings circulating among some lower courts that totally bar even *bringing* alternative claims and their survival past the pleading stage. Moreover, the *Hayes* opinion is consistent with the Fourth Circuit's other recent precedent permitting a plaintiff's claims pursuant to subsections (a)(1)(B) and (a)(3) not only to proceed past the motion to dismiss stage, but even past summary judgment.[26] In addition to being consistent with Fed. R. Civ. P. Rule 8, *Peters* and *Hayes* are also consistent with *CIGNA v. Amara*, where, after ruling that subsection (a)(1)(B) remedies were unavailable, the Supreme Court remanded to the lower court to determine whether equitable relief was appropriate under

---

[24] *See, e.g., Greenwell v. Grp. Health Plan for Emples. of Sensus U.S., Inc.*, 505 F.Supp.3d 594, 607 (E.D.N.C. 2020).

[25] *Hayes v. Prudential Ins. Co. of Am.*, 60 F.4th 848, 855 (4th Cir. Feb. 23, 2023).

[26] *Peters v. Aetna, Inc.*, 2 F.4th 199, 213-13, 238, 244 (4th Cir. Jun. 22, 2021).

29 U.S.C. §1132(a)(3).[27] Indeed, *Amara* "permitted the employee class in the first instance to pursue claims under both …. [29 U.S.C. §§ 1132](a)(1)(B) and 502(a)(3), and, after ruling that Section …. [29 U.S.C. § 1132](a)(1)(B) remedies were unavailable, permitted the lower court to determine whether reformation, estoppel, or surcharge were appropriate under Section …. [29 U.S.C. § 1132](a)(3)."[28]

Most federal circuits agree that *Amara* allows ERISA participants to bring simultaneous claims for relief under subsections (a)(1)(B) and (a)(3).[29] These holdings from the Supreme Court, this Circuit, and many other circuits reveal that the overly restrictive lower court interpretation of *Korotynska* Defendants urge is not the law of this Circuit. Rather, barring a plaintiff from ultimately obtaining duplicative relief is how *Korotynska* is most appropriately interpreted. And that determination cannot be made at the motion to dismiss stage. In short, "[w]here plaintiffs are not merely repackaging a benefits claim[], it is entirely appropriate to bring simultaneous § 502(a)(3)and § 502(a)(1)(B) claims to address 'two separate and distinct injuries' that are based in whole or in part on different facts."[30]

---

[27] 563 U.S. 421, 444-45 (2011).

[28] *Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F.Supp.3d 1209, 1222 (D. Utah 2019).

[29] *See, e.g., Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 546-47 (8th Cir. 2017) ("*Amara* implicitly determined that seeking relief under (a)(1)(B) does not preclude seeking relief under (a)(3)"); *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 960 (9th Cir. 2016) (*Amara* allows participants to seek plan benefits under Subsection (a)(1)(B) while simultaneously seeking reformation and surcharge under Subsection (a)(3)); *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015); (dismissal of Subsection 502(a)(3) claim premature where the plaintiff "has not yet succeeded on his § 502(a)(1)(B) claim, and it is not clear at the motion to dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide him a sufficient remedy."); *Silva v. Metro Life Ins. Co.*, 762 F.3d 711, 726-27 (8th Cir. 2014) ("a district court should generally not dismiss a 502(a)(3) claim as duplicative of a claim for benefits at the motion to dismiss stage of a case"); *Clark v. Feder, Semo & Bard, P.C.*, 808 F.Supp.2d 219, 225-26 (D.D.C. 2011).

[30] *England v. Marriott Int'l, Inc.*, 764 F. Supp. 2d 761, 779-80 (D. Md. 2011) (quoting *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839-40 (6th Cir. 2007); *Sloan v.*

Calling the MHPAEA cause of action "duplicative" of Plaintiffs' claim for benefits ignores well-settled law in this district and the spirit of both MHPAEA itself and Supreme Court precedent on ERISA claims.[31] Denying a claim asserted under §1132(a)(3) like the MHPAEA cause of action here is appropriate only if the alleged injury to the Plaintiffs may be **completely remedied** by a claim under §1132(a)(1)(B), a determination not possible at the motion to dismiss stage.[32] Other Fourth Circuit district courts have recognized this reality in the past.[33] There is no rule "prohibiting [p]laintiffs from pleading two different *causes of action* under [§1132](a)(1)(B) and [§1132](a)(3)… [m]oreover, in both *Varity* and *Amara*, the courts were able to determine the adequacy of potential ERISA remedies only after a trial in the district court."[34]

Allowing equitable relief via reformation of the plan terms under the MHPAEA cause of action will explicitly fulfill the purpose of that statute: preventing an ERISA plan from inappropriately discriminating against mental health/substance use disorder treatment benefits owed to Plaintiffs.[35] For example, in this instance, the Court could reform the terms of the Plan

---

*Life Ins. Co. of N. Am.*, 2019 U.S. Dist. LEXIS 201373, *11-12, 2019 WL 6173410 (D. Md. 2019) (same).

[31] *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *also CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011); *also Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F. Supp. 3d 1209, 1221; *Denise M.*, 2020 U.S. Dist. LEXIS 176154, at *18-20; *Brianna S. v. UnitedHealthcare*, No. 2:18-cv-00672-DBB, 2021 U.S. Dist. LEXIS 19997, at *23-24 (D. Utah Jan. 29. 2021); *Theo M. v. Beacon Health Options*, No. 2:19-cv-364-JNP, 2020 U.S. Dist. LEXIS 166903, at *19-20 (D. Utah Sep. 11, 2020).

[32] *See Christine S.*, 428 F. Supp. 3d at 1220 (D. Utah 2019).

[33] *See N.E. v. Blue Cross Blue Shield of North Carolina*, 2023 U.S. Dist. LEXIS 56537, *43-442023 WL 2696834 (M.D.N.C. Feb. 24, 2023) (holding that dismissal is not warranted in the "preliminary" stages of proceedings when it is not clear if "a § 1132(a)(1)(B) remedy is or would be adequate to address" a plaintiff's injury "related to the alleged Parity Act violation").

[34] *Id* at 1222.

[35] *See* 29 U.S.C. §1132; *see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016) (Congress enacted MHPAEA "to end discrimination in the provision of insurance coverage for mental health and substance abuse disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans.").

to prevent Defendants from requiring hallucinations, suicidality, or homicidality, as prerequisites for a patient to obtain coverage for residential mental health treatment and require Defendants to reprocess C.E.'s claims without those restrictions in place.[36] As discussed previously, this relief would not result in a repackaging of Plaintiffs' claim for benefits. Instead, it is a distinct remedy tailored to a distinct injury, without which Plaintiffs may not have their MHPAEA claim evaluated fairly.[37] Plans may not enforce coverage exclusions that violated MHPAEA as Plaintiffs allege Defendants did here.[38] At minimum, at the motion to dismiss stage the Court lacks substantial evidence to evaluate these potential remedies and it would be ill-timed to determine whether Plaintiffs' (a)(1)(B) claim would provide adequate relief.[39] Thus, Defendants' objection is premature because the Court cannot determine whether Plaintiffs are entitled to the equitable relief they request before a decision on the merits of each claim. Accordingly, the Court should deny Defendants' motion to dismiss Plaintiffs' MHPAEA cause of action.

## II.    PLAINTIFFS HAVE ADEQUATELY PLED THAT DEFENDANTS VIOLATED MHPAEA.

As Defendants acknowledged in their motion, to properly allege that Defendants violated MHPAEA Plaintiffs must:

   (1) identify a specific limitation on mental health benefits;

   (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiff seeks benefits; and

   (3) plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the

---

[36] Defendants' denial letters indicate they denied her claims because she was not displaying these three symptoms, *see* Plaintiffs' quotations from the letters, *supra*.

[37] *See Denise M. v. Cigna Health & Life Ins. Co.*, No. 2:19-cv-764-JNP, 2020 WL 5732321, at *13 (D. Utah Sep. 23, 2020).

[38] *Danny P. v. Catholic Health Initiatives*, 891 F.3d 1155, 1158 (9th Cir. 2018).

[39] *Denise M.* at *18-20.

limitations defendants would apply to the covered medical/surgical analog.[40]

Defendants acknowledge that Plaintiffs have already identified at least one specific limitation on mental health benefits: Plaintiffs' contention that Defendants' medical necessity criteria "require acute symptoms" as a prerequisite "to approve coverage for sub-acute care."[41] Defendants also acknowledge that Plaintiffs alleged that three types of facilities are medical/surgical analogues to the residential mental health treatment C.E. received at Fulshear: skilled nursing facilities, sub-acute inpatient rehabilitation facilities, and inpatient hospice facilities.[42]

However, Defendants dispute that Plaintiffs have adequately pled the third element: plausibly alleging a disparity in how Defendants treat residential mental health treatment and how they treat analogous medical/surgical claims. Because of the specific treatment limitation and medical/surgical analogues Plaintiffs identified, to satisfy this requirement Plaintiffs need to plausibly allege that Defendants due not require acute symptoms as a prerequisite to approve coverage for the sub-acute care provided at skilled nursing, sub-acute inpatient rehabilitation,

---

[40] *See* ECF Doc. No. 23 at 10 (internal quotation marks omitted) (citing *James C. v. Anthem Blue Cross and Blue Shield*, 2021 U.S. Dist. LEXIS 115701, *52, 2021 WL 2532905 (D. Utah Nov. 21, 2021)).

[41] *See* ECF Doc. No. 23 at 12. Plaintiffs again note that they withdraw allegations related to any other alleged disparities because Defendants explicitly represented that they did not decide any portion of C.E.'s claims based on any rationale other than their determination that his treatment was not medically necessary.

[42] *See* ECF Doc. No. 23 at 10. Defendants argue that "[i]npatient hospice care is an inappropriate analogous benefit" but cite to no case law and provide no legal analysis supporting their position. Courts that examined the issue have routinely disagreed. *See M.S. v. Premera Blue Cross*, 553 F. Supp. 3d 1000, 1031 (D. Utah Aug. 10, 2021) (holding that while there is no "binding authority" dictating that inpatient hospice care is in the same classification as residential treatment for purposes of a MHPAEA analysis, federal courts have "routinely recognized inpatient hospice treatment as providing a level of medical/surgical treatment that is analogous to the level of treatment at residential treatment centers"); *see also Jonathan Z. v. Oxford Health Plans*, 2020 U.S. Dist. LEXIS 21968, *15, 2020 WL 607896 (D. Utah Feb. 7, 2020) (accepting inpatient hospice care as an analogous medical/surgical level of care for wilderness therapy and transitional living care), *David P. v. United Healthcare Ins. Co.*, 2020 U.S. Dist. LEXIS 21967, *17, 2020 WL 607620 (D. Utah Feb. 7, 2020) (same).

and inpatient hospice facilities. Conversely, Plaintiffs also need to plausibly allege that Defendants require acute symptoms as a prerequisite to approve coverage for the sub-acute care provided in residential mental health treatment. Because Plaintiffs' allegations in the Complaint support this conclusion, and because even if the Complaint were not sufficient, the additional documents Defendants produced with their motion to dismiss would fill in the gaps, the Court should find that Plaintiffs have adequately pled this third element.

### A. Plaintiffs' Allegations Are Adequate and Well-Pled On Their Face.

In their Complaint, Plaintiffs accused Defendants of requiring C.E. to display acute mental health symptoms (i.e. hallucinations, homicidal thoughts, serious dysfunction, etc.) before Defendants would cover the residential mental health treatments she received at Fulshear.[43] Plaintiffs drew this conclusion because Defendants' first denial letter explicitly said that C.E. needed to display symptoms at that level of acuity – including explicitly saying C.E.'s danger to himself or others would need to be "shown by hearing voices telling them to harm themselves or others or persistent thoughts of harm that cannot be managed at a lower level of care."[44] While Defendants now characterize this implication as "conclusory" and argue that the MCG Guidelines demonstrate Defendants do not consider these symptoms necessary for patients to receive residential mental health care,[45] their March 24, 2023 letter belies those assertions. Defendants' communications strongly indicate they required the acute symptoms listed in the text of the letters themselves as a prerequisite for C.E. to receive coverage for sub-acute treatment. The Court should find that Plaintiffs adequately alleged this fact.

---

[43] *See* ECF 1 ¶ 46-49.
[44] *See id.* ¶ 11.
[45] *See* ECF Doc. No. 23 at 13-18.

Next, Plaintiffs alleged that Defendants did not require patients seeking sub-acute medical/surgical treatment to display acute symptoms as a prerequisite to receiving coverage for that treatment.[46] This comparison between the two demonstrates a disparity: Defendants will not cover sub-acute inpatient mental health treatment if a patient does not display acute symptoms, but will cover analogous sub-acute inpatient medical/surgical treatment for patients who do not display acute symptoms. This comparative analysis and the disparity it reveals are the essence of a MHPAEA violation. Accordingly, the Court should find that Plaintiffs have adequately pled that Defendants violated MHPAEA.

### B. To the Extent Plaintiffs' Allegations Suffer From a Lack of Detail Concerning Defendants' Medical/Surgical Guidelines, the Documents Defendants Produced Remedy Any Deficiencies.

Defendants, after previously withholding from Plaintiffs the medical/surgical guidelines Plaintiffs would have used to more clearly plead their MHPAEA violations, now attempt to support their motion using the guidelines Plaintiffs had previously requested. The newly produced documents bolster Plaintiffs' alleged MHPAEA disparity by showing: (1) Defendants do indeed require acute symptoms like hallucinations, homicidal or suicidal feelings, or similarly serious problems before they will authorize coverage for sub-acute mental health treatment;[47] and (2) Defendants explicitly forbid Plaintiffs from having "acute" symptoms when considering whether to authorize coverage for sub-acute medical/surgical treatment at skilled nursing or other analogous subacute inpatient facilities.[48]

Again, this proves Plaintiffs' assertion that Defendants require acute symptoms as a prerequisite to covering sub-acute inpatient mental health treatment but do not similarly require

---

[46] *See* ECF 1 ¶ 50.
[47] *See* Exhibit B at 1.
[48] *See* Exhibits D and E at 1.

acute symptoms as a prerequisite to cover analogous sub-acute inpatient medical/surgical treatment. Accordingly, the Court should hold that any infirmities in Plaintiffs' complaint are remedied by Defendants' production of documents demonstrating that Plaintiffs' alleged disparity and comparison is plausible.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' partial motion to dismiss Plaintiffs' MHPAEA cause of action.

DATED this 5th day of September, 2024.

By     s/ Brian S. King
            Brian S. King
            Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent to all parties registered to receive court notices via the Court's CM/ECF system.

Dated this 5th day of September, 2024.


/s/ Brian S. King
*Attorney for Plaintiffs*