IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARK E., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-1266 (RDA/IDD) |
| ) | |
| ANTHEM BLUE CROSS AND BLUE ) | |
| SHIELD, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' Anthem Blue Cross Blue Shield ("Anthem") and Maximus Employees Welfare Benefit Plan ("the Plan") Motion to Dismiss ("Motion"). Dkt. 22. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is now ripe for disposition. Considering the Motion together with Defendants' Memorandum in Support (Dkt. 23), Plaintiffs' Opposition Brief (Dkt. 32), and Defendants' Reply Brief (Dkt. 33), this Court DENIES the Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Plaintiffs, Mark E. ("Mark") and C.E. are residents of Fairfax County, Virginia. Dkt. 1 ¶ 1. Mark is C.E.'s father. *Id.* Plaintiffs assert that Anthem and the Plan wrongfully denied benefits, asserting two causes of action: a legal claim for benefits under 29 U.S.C. § 1132(a)(1)(B) and an

---

[1] For purposes of considering Defendants' Motions, the Court accepts all facts contained within Plaintiffs' Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

equitable claim for violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"). *Id.* ¶¶ 31-59. Anthem is an independent licensee of the nationwide Blue Cross Blue Shield network of providers. *Id.* ¶ 2. The Plan is a self-funded employee welfare benefits plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et. seq.*, ("ERISA"). *Id.* ¶ 3. In this case, Anthem was the third-party claims administrator, as well as the fiduciary under ERISA for the Plan during the treatment at issue. *Id.* ¶ 2. At all relevant times, Mark was a participant in the Plan and C.E. was a beneficiary of the Plan. *Id.* ¶ 3.

On March 20, 2023, C.E. was admitted to Solacium Fulshear ("Fulshear"), a Texas-based residential facility, which provides inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems. *Id.* ¶¶ 4, 10. C.E. had been experiencing ongoing struggles with depression, anxiety, suicidality (including two attempts), intrusive thoughts, disordered eating, and self-harm, which other levels of care had not been able to be adequately resolved. *Id.* ¶ 10. On admission to Fulshear, C.E.'s diagnoses included a personality disorder, a trauma and stressor related disorder, a depressive disorder, a feeding and eating disorder, and a neurodevelopmental disorder. *Id.* In a letter dated March 24, 2023, Anthem denied payment for C.E.'s treatment on the basis that "[t]he information [provided] does not show [C.E. is] a danger to [herself] or others, or that [C.E. is] having serious problems functioning . . . [and that t]here may be other treatment options . . . such as outpatient services." *Id.* ¶ 11.

In July 2023, C.E.'s treatment at Fulshear was interrupted when she required acute inpatient hospitalization for short term stabilization, after which she returned to Fulshear. *Id.* ¶ 10.

On September 15, 2023, Mark appealed the denial of payment for C.E.'s treatment at Fulshear. *Id.* ¶ 12. In his appeal, Mark specifically requested the following: (i) "that the next reviewer have experience treating individuals with C.E.'s diagnoses and that they be trained in the

2

details of the MHPAEA" in order to address all of Mark's concerns, *id.* ¶ 13; (ii) that Anthem review all of C.E.'s dates of service, *id.* ¶ 15; and (iii) that Anthem provide "specific reasons for the adverse determination" including referencing "the specific plan provisions on which the determination was based," *id.* ¶ 12. Mark also noted that Anthem had simply stated that C.E.'s treatment was not medically necessary without citing to any clinical evidence to support this assertion as well as only listing March 20, 2023 as the date of service that it had reviewed. *Id.* ¶¶ 14, 15. In his appeal, Mark also "identified skilled nursing, subacute rehabilitation, and inpatient hospice care as some of the medical or surgical analogues to the treatment C.E. received." *Id.* ¶ 17.

In a letter dated October 24, 2023, Anthem again denied payment for C.E.'s treatment for dates of service between July 19, 2023, and October 20, 2023. *Id.* ¶ 21. The reasoning behind the denial mentioned in the letter stated that "[t]he care [received by C.E.] is not considered medically necessary unless the clinical criteria are met. . . . [Anthem] need[s] to know how [C.E's] doctor plans to treat [her], including what medications are being used. [Anthem] did not receive this information, so [Anthem] could not tell whether the care is medically necessary." *Id.*

In a letter dated November 2, 2023, Anthem upheld the denial of payment for C.E.'s treatment regarding dates of service between June 25, 2023, to June 30, 2023, and July 2, 2023, to July 8, 2023. *Id.* ¶ 22. The justification provided noted that Anthem, despite receiving new information from C.E.'s medical record, "still [did] not think that [C.E.'s treatment plan] was medically necessary for [her]." *Id.* In a subsequent letter dated November 6, 2023, Anthem again denied payment for C.E.'s treatment for 83 days of treatment starting on August 2, 2023, noting the same rationale as the March 24, 2023 denial letter. *Id.* ¶ 23.

3

On December 7, 2023, Mark requested that the denial of benefits for C.E.'s treatment be evaluated by an external review agency. *Id.* ¶ 24. Mark argued that "C.E. was admitted to Fulshear on the advice of her treatment team and they specifically recommended that she not receive outpatient care due to safety concerns." *Id.* ¶ 26. Mark included a letter from Dana Van Renterghem, which noted the reasoning for C.E.'s care plan. *Id.* ¶ 27. Specifically, Mr. Renterghem noted that C.E.'s self-harming and suicidal ideation had resulted in nine occasions where she was given a suicide screen and placed on extra precautions to ensure her safety. *Id.* Additionally, the letter from Mr. Renterghem stated:

> It is highly recommended that C.E. continue in the residential treatment environment with consistent support and care. Lower level care in the past failed to alleviate her symptoms and removal to another version of low level care would create a high risk of regression, including the return of self-harm and suicidal ideation without the safety of the residential environment.

*Id.* Mark had not received a response to his requested appeal from Anthem as of the filing of the Complaint on January 30, 2024. As required by the Plan, Mark brough this action within 90 days of Anthem's final determination, asserting that Anthem and the Plan failed to provide the required benefits under 29 U.S.C. § 1132(a)(1)(B) and violated the MHPAEA under 29 U.S.C. § 1132(a)(3). *Id.* ¶¶ 31-59.

### B. Procedural Background

Plaintiffs failed the Complaint in the District of Utah on January 30, 2024. Dkt. 1. On April 26, 2025, Defendants filed a consent motion for an extension of time to file an answer, Dkt. 7, which was granted by Magistrate Judge Dustin B. Pead of the District of Utah on April 29, 2024, Dkt. 8. Magistrate Judge Pead also granted two subsequent consent motions to extend time to file a response to Plaintiffs' Complaint in June and July 2024. *See* Dkts. 12-15.

4

On July 22, 2024, the parties stipulated to changing the venue to the Eastern District of Virginia, and, on July 23, 2024, the case was transferred to this District. Dkts. 16-18.

On August 22, 2024, Defendants filed the instant Motion to Dismiss Plaintiffs' Complaint. Dkt. 22. On September 5, 2024, Plaintiffs filed their response in opposition. Dkt. 32. On September 11, 2024, Defendants filed their reply brief. Dkt. 33.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." *Coleman v. Maryland Ct. of App.*, 626 F.3d 187, 189 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of App. of Md.*, 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks and citation omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. *See id.*; *Twombly*, 550 U.S. at 556. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The factual allegations must be sufficient to "raise a right to relief above the speculative level" so

5

as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### III. ANALYSIS

In the Complaint, Plaintiffs assert two claims: (1) a claim for recovery of benefits under 29 U.S.C. § 1132(a)(1)(b) and (2) a claim alleging a violation of the MHPAEA under 29 U.S.C. § 1132(a)(3). In their Motion to Dismiss, Defendants allege that Plaintiffs' second claim, under the MHPAEA, should be dismissed for failure to state a claim. Dkt. 22 at 1.[2] Defendants assert two theories for this: (1) that Plaintiffs' Complaint fails to plausibly allege that Defendants violated the MHPAEA, and (2) because Plaintiffs have an adequate legal remedy, their claim for equitable relief is barred as duplicative. Dkt. 23 at 11-17. The Court will address Defendants' arguments one at a time.[3]

The MHPAEA, also known as The Parity Act, was enacted "to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016); 29 U.S.C. § 1185a. Under the MHPAEA, where a group health plan provides both medical and/or surgical benefits and mental health/substance use disorder benefits, the MHPAEA requires that "the

---

[2] Docket Entry page citations utilize the CM/ECF header's pagination, not any original pagination.

[3] Defendants do not seek to dismiss Plaintiffs' first claim for recovery of benefits.

treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii).

To state a MHPAEA claim, "a plaintiff must first identify a specific treatment limitation" on mental health benefits. *T.E. v. Anthem Blue Cross & Blue Shield*, 2023 WL 2634059, at *4 (W.D. Ky. Mar. 24, 2023) (internal citations omitted). When looking at these treatment limitations, the MHPAEA considers both quantitative and nonquantitative limitations. 29 C.F.R. § 2590.712(a). Quantitative limitations are expressed numerically, "while nonquantitative treatment limitations otherwise limit the scope or duration of benefits." *N.E. v. Blue Cross Blue Shield of N.C. & Carson Dellosa Publ'g, LLC*, 2023 WL 2696834, at *9 (M.D.N.C. Feb. 24, 2023) (citing *Michael M. v. Nexsen Pruet Group Med. & Dental Plan*, 2021 WL 1026383, at *10 (D.S.C. Mar. 21, 2021)). "Nonquantitative treatment limitations on mental health benefits include medical management standards limiting or excluding benefits based on medical necessity or medical appropriateness and refusal to pay for higher-cost therapies until it can be shown that a lower-cost therapy is not effective (also known as fail-first policies or step therapy protocols)." *Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F. Supp. 3d 1209, 1219 (D. Utah 2019) (internal citations omitted). Nonquantitative limitations can also be "based on whether the treatment is experimental or investigative." *Michael M.*, 2021 WL 1026383, at *10 (quoting 29 C.F.R. § 2590.712(c)(4)(ii)(A)).

Further:

> "A group health plan . . . may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan . . . as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies,

7

> evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification." 29 C.F.R. § 2590.712. In short, a plan may not impose a nonquantitative limitation for mental health or substance use disorder benefits that is more restrictive than the limitations on comparable medical/surgical benefits.

*Michael M.*, 2021 WL 1026383, at *11. Accordingly, "[t]o determine whether the Plan has imposed a more restrictive limitation on mental health/substance use disorder benefits than comparable medical/surgical benefits, the Court must identify what specific benefits it is comparing" and the plaintiff must show that the "mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared." *Id.* (quoting *A.H. by & through G.H. v. Microsoft Corp. Welfare Plan*, 2018 WL 2684387, at *6 (W.D. Wash. June 5, 2018)).

A plaintiff can allege violations of the MHPAEA by asserting either "(1) a facial challenge alleging that the terms of a plan discriminate against mental health and substance abuse treatments in comparison to medical or surgical treatment or (2) an as-applied challenge by alleging that the same nonquantitative treatment limitations are applied more stringently to mental health and substance use disorder benefits." *N.E.*, 2023 WL 2696834, at *9; *Michael M.*, 2021 WL 1026383, at *10.

Plaintiffs have not specified the type of MHPAEA challenge brought here, but Plaintiffs allege that Defendants violated the MHPAEA when Defendant applied medical necessity criteria more stringently by using acute inpatient care guidelines and criteria to evaluate claims for C.E.'s care received at sub-acute residential mental health/substance abuse treatment facilities, including by failing to take into consideration safety issues and considerations of preventing decline or relapse when admitted into an intermediate care facility. Dkt. 1 ¶¶ 39-57. Therefore, it appears that Plaintiff brings an as-applied challenge.

8

When a plaintiff brings an as-applied challenge, the plaintiff must show that the plan applies the nonquantitative treatment limitation disparately to mental health benefits and medical/surgical benefits. *Michael M.*, 2021 WL 1026383, at *14 (citing *Welp v. Cigna Health & Life Ins. Co.*, 2017 WL 3263138, at *6 (S.D. Fla. July 20, 2017); 29 C.F.R. § 2590.712(c)(4)(ii)(A)). Specifically, to state a claim under the MHPAEA, Plaintiffs must: (1) identify what unequal limitation allegedly violated the MHPAEA; (2) identify medical or surgical analogues to the mental health treatment at issue; and (3) compare this limitation as it relates to C.E.'s mental health treatment with medical or surgical analogues to show a plausible disparity. *See N.E.*, 2023 WL 2696834, at *10; *see also Charles W. v. United Behav. Health*, 2019 WL 6895331, at *4 (D. Utah Dec. 18, 2019); *James C. v. Anthem Blue Cross & Blue Shield*, 2021 WL 2532905, at *18 (D. Utah June 21, 2021), *appeal dismissed* (Nov. 30, 2021); *Johnathan Z. v. Oxford Health Plans*, 2020 WL 607896, at *13 (D. Utah Feb. 7, 2020) (applying same three-step analysis).

Here, it appears that Plaintiffs have plausibly alleged the first two prongs. For prong one, Plaintiffs allege that Defendants violated the MHPAEA with one key unequal limitation. Specifically, Plaintiffs assert that Defendant imposed a nonquantitative treatment limitation on C.E.'s mental health benefits by utilizing medical necessity criteria that deviate from the generally accepted standard of medical practice, Dkt. 1 ¶ 46, including by using acute care requirements to evaluate a sub-acute level of care, *id.* ¶¶ 47-51. For prong two, Plaintiffs identify treatments at "skilled nursing facilities, inpatient hospice care, and rehabilitation facilities," *id.* ¶ 44, as medical/surgical care facilities that are analogous to the residential treatment issue.[4] *See also B.H.*

---

[4] Defendants allege that "inpatient hospice care" is not an analogous benefit. Dkt. 23 at 10 n.6. Nationally, case law appears to be split on this issue. *Compare Brian S. v. United Healthcare Ins. Co.*, 2021 WL 2444664, at *3 (D. Utah June 15, 2021) ("[O]n motions to dismiss this Court

9

*v. Anthem Health Plans of Va., Inc.*, 2023 WL 5270658 at *7-8 (E.D. Va. July 27, 2023) (noting that the first two prongs of the MHPAEA analysis at the pleading stage were met under nearly identical circumstances), *report and recommendation adopted*, 2023 WL 5246314 (E.D. Va. Aug. 15, 2023).

The major question thus lies in the third prong – whether Plaintiffs have sufficiently alleged a disparity between C.E.'s mental health treatment and the medical/surgical analogues. Taking the Complaint's well-pleaded allegations as true, viewing them in the light most favorable to Plaintiffs, and drawing reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have plausibly alleged a MHPAEA claim.

A. Pleading the Disparity Prong

To state a Parity Act claim, the plaintiff must allege a disparity between the nonquantitative treatment limitation with respect to mental health benefits and comparable medical/surgical benefits. *N.E.*, 2023 WL 2696834, at *10; *Michael M.*, 2021 WL 1026383, at *14. Here, Plaintiffs allege "[t]he medical necessity criteria used by [Defendants] for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits," Dkt. 1 ¶ 43, including skilled nursing facilities, inpatient hospice care, and rehabilitation facilities, *id.* ¶ 44. Specifically, Plaintiffs assert that Defendants applied medical necessity criteria that deviated from the generally accepted standards of medical practice when evaluating C.E.'s mental

---

has consistently determined that analogizing mental health residential treatment centers to medical/surgical inpatient hospice and rehabilitation facilities is sufficient to state a Party Act claim."), *with John R. v. United Behav. Health*, 2019 WL 6255085, at *6, n.8 (D. Utah Nov. 22, 2019) ("The court does not understand how inpatient hospice care is at all analogous to a wilderness therapy program or residential mental health treatment program."). The Court, however, need not decide this issue at this stage of the case because Plaintiffs identify other medical/surgical care treatments as analogous, and Defendants do not challenge those analogues.

10

health treatment claim but followed those standards for analogous levels of medical/surgical benefits. *Id.* ¶ 46. To support this allegation, Plaintiffs quote from Defendants' letters denying coverage to C.E., demonstrating the Plan "improperly utilized acute medical necessity criteria to evaluate the non-acute treatment that C.E. received," thus imposing the restrictions of acute care requirements on a sub-acute level of care on benefits received at a residential treatment center but not on benefits received at analogous medical or surgical facilities. *Id.* ¶¶ 47, 50; *see also id.* ¶¶ 51-57. Plaintiffs also allege that the level of care applied by Defendants failed to take into consideration safety issues and consideration of preventing decline or relapse, which are usually taken into consideration upon admission to a medical/surgical care facility. *Id.* ¶54.

Defendants challenge the sufficiency of these allegations. Defendants first contend that the Complaint's allegations are not well-pled because they are either conclusory or legal recitations. Dkt. 23 at 11. Defendants next challenge the Complaint's allegations as inconsistent with Defendants proposed exhibits and encourage the Court to disregard any factual allegations to the extent they are inconsistent with the exhibits. *Id.* at 11-12. The Court does not find these arguments persuasive.

### 1. Plaintiff's Well-Pled Factual Allegations

Defendants first challenge the Complaint's allegations as conclusory or legal recitations, contending that Plaintiffs fail to plead specific, factual details regarding the alleged disparities. *Id.* at 11. More specifically, Defendants argue that Plaintiffs' Complaint fails because it does not "specify or enumerate the 'generally accepted standards' that [Defendants] supposedly failed to meet," nor do Plaintiffs "compare limitations across analogous benefits." *Id.* at 12-13. The Court, however, finds the Complaint sets forth sufficient factual allegations to state a plausible MHPAEA violation.

As an initial matter, the Court notes that Plaintiffs allege that Mark requested the Plan Documents, including any clinical guidelines or medical necessity criteria utilized in the determination, and never received them. Dkt 1. ¶¶20, 26. Thus "the specifics as to how [Defendants] interpreted and applied the Plan to [C.E]'s situation is information held within [Defendant]'s exclusive control. And as such, Plaintiffs cannot be expected to plead facts that are in the possession of Defendants." *K.K. v. United Behav. Health*, 2020 WL 262980, at *5 (D. Utah Jan. 17, 2020) (internal quotation marks omitted). Rather, "a plaintiff need only plead as much of his prima facie case as possible based on the information in his possession." *Nathan W. v. Anthem Bluecross Blueshield of Wis.*, 2021 WL 842590, at *7 (D. Utah Mar. 5, 2021); *see also Timothy D. v. Aetna Health & Life Ins. Co.*, 2019 WL 2493449, at *3 (D. Utah June 14, 2019). Given that Plaintiffs allege they did not have these Plan Documents in their possession at the time they filed the Complaint, they cannot be expected to allege specific details from those documents. The Court will not punish Plaintiffs "for not offering [additional] facts when [Mark's] repeated request to learn the same have [allegedly] been ignored." *T.E.*, 2023 WL 2634059, at *6 (internal citations omitted). Importantly, numerous other district courts, both in the Fourth Circuit, and elsewhere, have found allegations similar to Plaintiffs' sufficient to state a MHPAEA claim. *See, e.g.*, *B.H*, 2023 WL 5270658, at *10-11 (holding that the plaintiffs' allegations were sufficient to state a Parity Act claim in similar circumstances and collecting cases); *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265 (10th Cir. 2023) (holding that plaintiff plausibly alleged an MHPAEA claim under similar circumstances); *Michael W. v. United Behav. Health*, 420 F. Supp. 3d 1207 (D. Utah 2019) (holding that plaintiff sufficiently pled a Parity Act claim against both defendants); *Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248 (S.D.N.Y. 2018) (holding that plaintiff

plausibly pled a violation of the Parity Act). Consistent with those decisions, this Court finds that the Complaint's allegations allege a plausible MHPAEA violation.

Seeking to avoid this conclusion, Defendants cite out-of-Circuit and distinguishable cases in support of its contention that Plaintiffs' allegations fail to state a plausible claim. In particular, the Court notes that the several cases upon which Defendants attempt to rely were decided at later stages of the case – namely summary judgment – which suggests that the claims asserted here should survive the Motion to Dismiss and would be more appropriately resolved at that stage of the proceedings. *See, e.g.*, *James C.*, 2021 WL 2532905 (decided on cross motions for summary judgment), *Michael M.*, 2021 WL 1026383, at *1 (same).

Defendants cite *Roy C., Welp*, and *Charles W.*, for the proposition that Plaintiffs here have failed to state a claim. *See* Dkt. 23 at 9-18 (citing *Roy C. v. Aetna Life Ins. Co.*, 2018 WL 4511972 (D. Utah Sept. 20, 2018), *Welp v. Cigna Health & Life Ins. Co.*, 2017 WL 3263138 (S.D. Fla. July 20, 2017), and *Charles W.*, 2019 WL 6895331). In each of those cases, the MHPAEA claim was dismissed because the plaintiff failed to identify relevant limitations or compare them to any medical or surgical analogues. Here, by contract, Plaintiff has alleged the application of medical necessity criteria, which deviates from generally accepted medical standards, and the imposition of an acute care requirement for sub-acute care. Accordingly, the citations to those cases do not require the dismissal of Plaintiffs' MHPAEA claim here.

In sum, case authority supports finding that, at this stage of the proceedings, Plaintiffs have adequately alleged a plausible MHPAEA violation and Defendants' citations to cases holding the contrary are distinguishable and unpersuasive. Accordingly, the Motion to Dismiss will be denied on this basis.

2. Declining to Resolve Whether a Disparity Actually Exists

Defendants next argue that Plaintiffs' allegations "contradict the Plan documents and clinical criteria," and therefore, analysis of the Plan document and clinical criteria shows that no plausible disparity can exist. Dkt. 23 at 11-12. Much of Defendants' Motion focuses on the sealed exhibits they attach, and Defendants ask the Court to analyze the exhibits and disregard Plaintiffs' factual allegations in the Complaint that appear contrary to those documents. *Id.* at 13-15.

To begin with, even if the exhibits show no disparity in treatment of mental health conditions on their face, such a facial neutrality would not impact Plaintiffs' as-applied MHPAEA challenge. "[I]n other words, simply because a plan does not explicitly discriminate against mental health benefits is not grounds to dismiss a Parity Act claim. Instead, if a plaintiff properly alleges that the health plan provider has differentially applied a facially neutral plan term, then the claim can proceed." *K.K.*, 2020 WL 262980, at *3 (internal quotation marks omitted). Such an inquiry by the Court is more reflective of a later stage of litigation, as courts often need further discovery to evaluate such claims and reach a conclusion. *See Nathan W.*, 2021 WL 842590, at *8.

Moreover, at this stage of the litigation, the Court is not responsible for "resolv[ing] contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Feldman v. L. Enf't Assocs. Corp.*, 779 F. Supp. 2d 472, 480 (E.D.N.C. 2011). Nor are Plaintiffs responsible for *proving* the case at this point. *Pinder v. Knorowski*, 660 F. Supp. 2d 726, 737 (E.D. Va. 2009); *see Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 269 (4th Cir. 2022). Therefore, this Court declines to resolve contests of facts regarding what Defendants' attached exhibits do or do not require.

In sum, the contents of the attached exhibits is not a basis to dismiss Plaintiffs' as-applied challenge here.

B. Plaintiff's Claim for Equitable Relief is Not Barred

Finally, Defendants contend that, even if Plaintiffs have stated a viable MHPAEA claim, it is a claim for equitable relief pursuant to 29 U.S.C. § 1132(a)(3) and therefore must be dismissed where Plaintiffs have an adequate remedy at law in Count 1, pursuant to 29 U.S.C. § 1132(a)(1)(B). In other words, the issue raised by Defendants here is whether the assertion of a claim under Section 1132(a)(1)(B) precludes Plaintiffs from asserting a claim under Section 1132(a)(3). The answer is no.

Plaintiffs' first cause of action under Section 1132(a)(1)(B) provides for a cause of action for a participant or beneficiary seeking to recover benefits under a plan, to enforce their rights under the terms of the Plan. As a separate provision, Section 1132(a)(3) of ERISA provides that a "civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). In other words, Section 1132(a)(3) is a catchall provision and "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [ERISA] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

The Supreme Court and the Fourth Circuit have consistently held that, if "adequate relief is available for the plaintiff's injury through review of [their] individual benefits claim under [Section] 1132(a)(1)(B), relief under [Section] 1132(a)(3) will not lie." *Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 102-03 (4th Cir. 2006) (citing *Varity Corp.*, 516 U.S. at 515, 116). "[I]f the circumstances of a case indicate that a [S]ection 1132(a)(1)(B) remedy is or would be adequate to address the plaintiff's alleged injury, the court need not address a remedy sought under [S]ection 1132(a)(3) for the same injury." *Alan R. v. Bank of Am. Grp. Benefits Program*, 2022 WL 413935,

15

at *11 (W.D.N.C. Feb. 9, 2022). At this stage of the proceedings, the Court cannot say that Plaintiffs' claims are duplicative to the extent that the MHPAEA should be dismissed based on the existence of an adequate remedy at law. On first glance, the two claims may appear duplicative, but, as courts recognize, there are certain remedies that may only be obtained through equitable claims. *See Dean v. National Production Workers Union Severance Trust Plan*, 46 F.4th 535, 544-45 (7th Cir. 2022) (addressing ERISA claims related to rollover of accounts, and noting that in *CIGNA Corp. v. Amara*, "the district court changed the terms of the plan—taking out some provisions and adding new ones. The Supreme Court concluded that [Section] 502(a)(1)(B)'s plain language did not authorize these changes, which were 'akin to the reform of a contract, [and] seem[ed] less like the simple enforcement of a contract as written and more like an equitable remedy.' But the Court held that the district court did have authority to modify the terms of the plan under [Section] 502(a)(3)." (quoting *CIGNA*, 563 U.S. 421, 425, 433, 436, 442 (2011)) (internal citations omitted)); *see also Christine S. V. Blue Cross v. Blue Shield of N.M.*, 428 F. Supp. 3d 1209 (D. Utah 2019) (discussing the same). Thus, if the relief sought is unavailable pursuant to Section 1132(a)(1)(B), relief pursuant to Section 1132(a)(3) may yet be appropriate. However, given the preliminary stage of the case and the need for further proceedings on the claim for benefits in Plaintiffs' first cause of action, the Court will defer determination of whether a Section 1132(a)(3) remedy would be necessary to modify the terms of the Plan to provide relief if the first claim is ultimately established. *See N.E. v. Blue Cross Blue Shield of N.C. & Carson Dellosa Publ'g, LLC*, 2023 WL 2696834 (M.D.N.C. Feb. 24, 2023), *report and recommendation adopted sub nom. N.E. v. Blue Cross Blue Shield of N.C.*, 2023 WL 2692414 (M.D.N.C. Mar. 29, 2023) (holding the same); *see also Wood v. General Dynamics Corp.*, 157 F. Supp. 3d 428, 431 (M.D.N.C. 2016) (exercising discretion under Federal Rule Civil Procedure 12(i) to defer ruling

until the next dispositive stage of litigation where it was difficult to discern whether the equitable relief claim was duplicative of the denial of benefits claim due to the limited factual record).

In sum, Plaintiffs' MHPAEA claim will be allowed to proceed at this point and Defendants' Motion to Dismiss on this basis will be denied. The Court reserves determination on whether potential relief on the MHPAEA claim would be duplicative of Plaintiffs' first cause of action under 29 U.S.C. § 1132(a)(1)(B), or would require reformation of the Plan terms under the 29 U.S.C. § 1132(a)(3).

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Partial Motion to Dismiss (Dkt. 22) is DENIED.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all parties and to all counsel of record.

It is SO ORDERED.

Alexandria, Virginia
March 25, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge